# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL LEWIS LOFFREDA, JR,** | **CASE NO. 4:15-cv-00896-MWB-GBC** |
| **Plaintiff,** | **(JUDGE BRANN)** |
| **v.** | **MAGISTRATE JUDGE COHN** |
| **CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,** | **REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL** |
| **Defendant.** | **Doc. 1, 12, 13, 14, 15** |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of  Michael Lewis Loffreda, Jr. ("Plaintiff") for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq*., 416 *et seq.* (the "Regulations").[1] Plaintiff was in a car accident on May 2, 2011, when he was twenty-four years old. Doc. 13. Plaintiff reported and exhibited significant symptoms

---

[1] Part 404 governs disability insurance benefit applications and Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

through December of 2011. Plaintiff likely met the definition of disability from May through December of 2011, but the Act requires the disability last twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Aside from ophthalmology records, there is no evidence of treatment after December of 2011 through September of 2013, except for a single follow-up with his neurologist in March of 2013 to get disability forms filled out. Doc. 13. On September 27, 2013, the ALJ limited Plaintiff to a restricted range of sedentary work and found that he could perform work as, *inter alia*, a surveillance system monitor. Doc. 13. This is a position that requires an individual to watch security screens, and use a phone to call authorities if something looks suspicious. *See* 379.367-010 SURVEILLANCE-SYSTEM MONITOR, DICOT 379.367-010. It is a sedentary position that does not require any postural movements, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, or feeling. *Id.*

Plaintiff's treating source opined Plaintiff suffered debilitating physical limitations. Doc. 13. The ALJ properly discounted this opinion because Plaintiff was the sole caregiver for his three year-old child for six hours out of the day. Doc. 13. Although caring for a three year-old six hours a day may not demonstrate Plaintiff could work full-time, it contradicts the treating source opinion. Doc. 13. For instance, the treating source opined Plaintiff's pain would "constantly" preclude him from performing even low-stress tasks. Doc. 13. Regulatory guidance explicitly allows the ALJ to discount a treating

source opinion when contradicted by daily activities. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at *36936.

Treating and non-treating sources opined that Plaintiff suffered lingering work-related mental limitations. Doc. 13. The administrative law judge ("ALJ") failed to include mental limitations in the RFC. Doc. 13. Defendant acknowledges this may have been an error, but alleges it was harmless because the mental limitations assessed would still allow Plaintiff to perform work in the national economy. (Def. Brief). Plaintiff did not reply. Defendant accurately characterizes the record. The ALJ obtained responses to interrogatories from a vocational expert stating Plaintiff could work as a surveillance system monitor even if limited to simple, routine, repetitive work. Doc. 13. Any error in failing to include these limitations was harmless.

The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Here, the Court would not direct a verdict in Plaintiff's favor. For the foregoing reasons, the Court recommends that

Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On July 1, 2011, Plaintiff applied for DIB and SSI. (Tr. 171-81). The state agency denied the application and Plaintiff requested a hearing. (Tr. 76-89, 116-17).  On July 26, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney— and a vocational expert ("VE") appeared and testified. (Tr. 512-37). On September 27, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 12-26). Plaintiff requested review with the Appeals Council, which the Appeals Council denied on March 10, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On May 7, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On July 6, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 11, 12). On August 20, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 18). On September 22, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 20). On January 11, 2016, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive DIB or SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *Id.* The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's

impairment prevents the claimant from doing any other work. *Id.* Before step four, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). *Id.*

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. § 423(d)(5)(A). Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Unless the Court would direct a verdict in Plaintiff's favor if the issue were before a jury, substantial evidence supports the denial. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

## IV.    Relevant Facts in the Record

The administrative transcript contains 827 pages. Doc. 13. Plaintiff was born in 1986 and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 28); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a fast food worker, landscape laborer, general laborer, and forklift operator. (Tr. 28, 251).

Plaintiff last worked in summer 2010, and stopped working to stay home with his infant daughter while his wife went to work. (Tr. 47, 574). Plaintiff suffered injuries in a car accident on May 2, 2011, the alleged onset date, when he was twenty-four years old. (Tr. 382). He presented to Penn State Hershey Medical Center "with significant

intracranial injuries, as well as multiple facial fractures." (Tr. 382). Providers diagnosed a traumatic brain injury and he underwent significant rehabilitation through December of 2011. (Tr. 272-569, 586-744). He reported and exhibited significant symptomatology during that time. *Id.* Aside from ophthalmology records, there is no evidence of treatment after December of 2011 until March of 2013, when Plaintiff followed-up with Dr. Zhang. Doc. 13. Plaintiff had health insurance through his mother until September of 2012, when he turned 26. (Tr. 61). There is no evidence of treatment from March of 2013 through September 27, 2013, the date of the ALJ decision. Doc. 13.

On October 1, 2011, Plaintiff completed a Function Report. (Tr. 231). He reported medications made him sleepy and that he was using a walker, brace, and cane "every time [he] go[es] out." (Tr. 230). He reported problems with memory, completing tasks, concentrating, following instructions, and essentially every physical function. (Tr. 229). He reported continued problems with his right upper extremity. (Tr. 229). He reported he had "no balance." (Tr. 227). On November 4, 2011, Dr. Zhang noted Plaintiff seemed like he had "just used [alcohol], but he denies it. Ambulates indep[endently] without using [aids], right spastic hemiparetic gait with no drop, no loss of balance, no sensory deficits, motor in right upper extremity nearly normal," with decreased strength and increased tone in the right lower extremity. (Tr. 554). Dr. Zhang instructed Plaintiff to follow-up in three to six months and not to drink alcohol while taking Zanaflex. (Tr.

554). The same day, Plaintiff denied memory impairment to a physician evaluating him for Botox injections to his lower extremity. (Tr. 526).

On December 9, 2011, state agency physician Dr. Robert Balogh, Jr., M.D., reviewed Plaintiff's file and opined that he could perform a range of sedentary work. (Tr. 83-86). Dr. Balogh explained that Plaintiff was only partially credible, citing a contradiction between Plaintiff's report of limited daily activities in support of his application for benefits and medical records which "describe improving function and ability to do ADL's, resolution of mental functioning." (Tr. 85). Dr. Balogh continued:

> His right upper extremity is recovered and his remaining spasticity is improving with botox injections. His strength will improve with continued physical therapy. He takes no narcotic medications. He claims drug side effects. These would not interfere with work activities. He attended/is attending physical therapy. He does not use an assistive device.

(Tr. 85). Dr. Balogh cited the November 4, 2011 record stating:

> [C]laimant can walk independently without any assistive device. He has a right spastic hemiparetic gait with foot drop, no loss of balance, no sensory deficits. He has some decreased strength in right lower leg. The motor exam in the right upper extremity is nearly normal. Noted that spasticity is 'improving/resolving'. Advised to use AFO for outdoor activities. Claimant not using AFO.

(Tr. 85).

On January 10, 2012, Plaintiff underwent a consultative examination with Dr. Louis Laguna, in connection with his application for benefits. (Tr. 570-78). Dr. Laguna observed Plaintiff "walked with a significant impairment. He appeared to have partial paralysis on his right side and his right foot was pointed inward, making it difficult for

him to take normal steps. He walked very slowly and it took him much time to get from the waiting room into my office." (Tr. 575). Plaintiff reported anxiety and depression as a result of the accident, and that he had "difficulty ambulating and still is not able to use his right hand very well. He also said that he has numbness in his lower extremities, and he has incontinence." (Tr. 575). Plaintiff reported he was "able to take care of his personal care, health, and hygiene, but it takes him quite some time to complete these activities of daily living (ADLs) because of his ongoing partial paralysis. He said that this also impairs his ability to cook and clean." (Tr. 578). Plaintiff reported memory problems, but on examination, "his recent, recent-past, and remote memory were well intact." (Tr. 577). Examination was otherwise normal. (Tr. 577). Dr. Laguna assessed "slight" limitations with handling detailed instructions and making judgments, and explained Plaintiff "appears to have some slight residual memory impairment." (Tr. 571). Dr. Laguna opined that Plaintiff's ability to interact with others, deal with work pressures, and handle work-changes was unrestricted. (Tr. 571). Dr. Laguna explained, "[a]lthough the claimant does have some anxiety and depression, they appear to be situational for the most part." (Tr. 578).

On February 24, 2012, Dr. Karen Weitzner, Ph.D., reviewed Plaintiff's file and authored an opinion. (Tr. 82, 87). She opined that Plaintiff had no restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 82). She opined

"Claimant is able to complete simple, routine tasks. His ability to sustain concentration is somewhat limited… limited in his ability to adapt to changes in demands and routines." (Tr. 87). She cited the mental status examination from the consultative examination and found Plaintiff "partially credible." (Tr. 87).

Plaintiff submitted additional records after his claim was initially denied. Ophthalmology records in December of 2011 noted visual disturbances, rash, and tearing in his left eye, with decreased acuity in both eyes and other findings on examination. (Tr. 758). By March of 2012, Plaintiff reported only tearing in his left eye, with normal acuity in his left and 20/25 in his right. (Tr. 764). No other abnormalities are noted on examination. (Tr. 764). Plaintiff had a history of Oxycontin and heroin abuse, but had been clean since his accident. (Tr. 768). Providers scheduled surgery for his left eye. (Tr. 768). At a preoperative physical examination later that month, Plaintiff reported "good functional capacity," with intermittent upper extremity strength training, and "does housework/vacuum, no [chest pain/shortness of breath]," although he reported "activity limited by spastic hemiparesis." (Tr. 769). Plaintiff was taking acetaminophen, aspirin, and Zanaflex with normal examination aside from right extremity weakness and right foot drop. (Tr. 770). Neurologic, neck, and other systems showed no abnormalities. (Tr. 770). Plaintiff underwent the surgery on March 30, 2012, and requested that a tube involved be removed early, although providers "discussed risks." (Tr. 777). Plaintiff underwent repeat eye surgery in May of 2012 because "tube was dislodged shortly after

surgery." (Tr. 791). Plaintiff continued reporting "good functional capacity." (Tr. 792). Plaintiff was using alcohol monthly and cigarettes daily. (Tr. 792). Post-operatively, Plaintiff reported less tearing, with soreness when he blinked. (Tr. 806). He was "doing well." (Tr. 807). The record contains no evidence of subsequent treatment until March 2013. Doc. 13.

On September 18, 2012, Dr. Zhang authored a "to whom it may concern" letter stating:

> He continues to require assistance of a handrail to go up/down stairs, the assistance of a cane for uneven surfaces when walking. He requires the assistance of another person for safety getting in/out of the shower. Michael needs to utilize a brace, MAFO, when walking for safety due to foot drop. In my opinion Michael needs the assistance of another individual for mobility and safety.

(Tr. 814). The record contains no evidence Plaintiff treated with Dr. Zhang in 2012. Doc. 13.

On March 15, 2013, Plaintiff presented to Dr. Zhang with a chief complaint of "paperwork for disability." (Tr. 818). Plaintiff later testified that he had seen Dr. Zhang in March of 2013 to have his form "filled out." (Tr. 61). Plaintiff reported "right spastic hemiparesis," along with fatigue and depression. (Tr. 818). Constitutional and musculoskeletal review of systems was "negative except as documented in history of present illness" with "no abnormal balance." (Tr. 818). Examination indicated "right hemiplegic gait pattern with right foot drop, strength 5/5 throughout [upper extremity] hip 5/5, knee 4/5, ankle DF/PF 0/5, right foot everted, pronated and abducted." (Tr. 820).

Dr. Zhang encouraged "stretching and strengthening" for Plaintiff's "spasticity right ankle" and prescribed Prozac for "depression and central fatigue." (Tr. 820). There is no mention of upper extremity impairments or back pain. (Tr. 820).

On March 20, 2013, Dr. Zhang completed a physical RFC assessment. (Tr. 822-25). Dr. Zhang left the portion asking him to list "frequency and length of contact" blank. (Tr. 822). Dr. Zhang opined that Plaintiff's "pain or other symptoms" would "constantly" be severe enough to "interfere with attention and concentration needed to perform even simple work tasks." (Tr. 823). Dr. Zhang opined that Plaintiff was "incapable of even 'low stress' jobs," could not walk for more than one block at a time, sit for more than an hour at a time, or stand for more than forty-five minutes at time. (Tr. 823). He opined that Plaintiff could not sit, stand, or walk for more than a combined six hours out of an eight-hour work day, would need unscheduled breaks every forty-five to sixty minutes for ten to fifteen minutes, needed to elevate his legs above knee level for about fifty percent of the day, was limited in the use of his neck, could never reach overhead with his arm, and would be absent more than four days per month. (Tr. 825). On April 15, 2013, Dr. Zhang completed paperwork for Plaintiff to receive a handicap parking placard. (Tr. 827).

On July 26, 2013, Plaintiff appeared and testified before the ALJ. (Tr. 75). Plaintiff testified that if he sit or stood for "that long" his leg, feet, and "back starts hurting really bad" and he has to "lay down." (Tr. 47). He testified to coordination problems in his right upper extremity. (Tr. 52). He testified to significant balance problems, stating "I can't

really reach up to get stuff…because of my balance is horrible." (Tr. 53). He testified "I don't really have any dizziness going on," but if he was in a crowd of people, his balance problems would lead him to get knocked over. (Tr. 54). He testified that he could not lift more than ten pounds because "it throws my balance off." (Tr. 55). He testified that he used a cane if it was windy. (Tr. 57). When asked if he had spoken to his doctor about elevating his legs, he said "not really." (Tr. 58). He testified to continued memory problems. (Tr. 59). He testified that he was unable to dress himself unless he said down "because of my balance," and that if he tried to dress while standing he would "fall right over." (Tr. 64). Plaintiff also testified he was the sole caretaker of his three year-old child for six hours during the day. (Tr. 26-28, 48-49, 61-65).

On August 1, 2013, the ALJ submitted interrogatories to a vocational expert, who responded that Plaintiff could work as a surveillance system monitor even if limited to unskilled work that was "simple, repetitive… performed in one place." (Tr. 256).

## V. Plaintiff Allegations of Error

### A. Dr. Zhang's opinion

Plaintiff asserts that the ALJ erred in assigning limited weight to Dr. Zhang's treating source opinion.[2] (Pl. Brief at 7). The ALJ explained Dr. Zhang's opinion was "inconsistent with the record," specifically medical records and Plaintiff's testimony:

---

[2]The Social Security Administration recently eliminated the treating source rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 ("we

Although the claimant sustained horrible injuries at his alleged onset date, records from late 2011 and following, including Dr. Zhang's report from March 2013, indicate the claimant is doing better. Despite some right sided weakness, the claimant testified he can use his right hand although he still has trouble with things such as trying to cut with a knife. He can sign his name but *his* handwriting is worse than it used to be. He denied dizziness and testified that he did not really keep his legs elevated. He testified he could make simple meals in the microwave and cares for his daughter several hours a day.

(Tr. 28).

Activities of daily living can be probative in a variety of ways. If a claimant performs activities of daily living on a regular and continuous basis, equivalent to eight hours a day, five days a week, they may be used as direct evidence of non-disability. *See Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981). Plaintiff correctly notes that sporadic and transitory activities that are not performed on a regular and continuing basis may not be used as direct evidence of non-disability. (Pl. Brief at 14). However, even sporadic and transitory activities may be indirect evidence of non-disability when they contradict evidence Plaintiff proffers in support of disability. *See Palmer v. Colvin*, No. 115CV00704SHRGBC, 2016 WL 5817240, at *18 (M.D. Pa. Aug. 25, 2016), *report and recommendation adopted,* No. 1:15-CV-704, 2016 WL 5787354 (M.D. Pa. Oct. 4, 2016) (citing *Horodenski v. Comm'r of Soc. Sec.*, 215 Fed.Appx. 183, 189 (3d Cir. 2007) ("Horodenski's testimony about her daily activities is not merely significant because of its

---

are not retaining the treating source rule in final 404.1520c and 416.920c for claims filed on or after March 27, 2017").

substance; it was also significant because it was internally inconsistent, which aided the ALJ in determining how much weight to afford to Horodenski's testimony"); *Vargas v. Colvin*, No. 1:14-CV-02407-YK-GBC, 2016 WL 1084966, at *15 (M.D. Pa. Jan. 14, 2016), *report and recommendation adopted*, No. 14-CV-02407, 2016 WL 1076049 (M.D. Pa. Mar. 18, 2016)).

Plaintiff was the sole caretaker of his three year-old child for six hours during the day. (Tr. 26-28, 48-49, 61-65). Plaintiff states that these activities are "not inconsistent with Dr. Zhang's opinion." (Pl. Brief at 15). In this case, Dr. Zhang opined that Plaintiff's pain would "constantly" interfere with his attention and render him unable to perform even low-stress tasks. (Tr. 822-25). Plaintiff's ability to watch a three year-old several hours a day contradicts Dr. Zhang's opinion that he would "constantly" be unable to do so. (Tr. 822-25). Similarly, Plaintiff's ability to supervise a three year-old for six continuous hours contradicts Dr. Zhang's opinion that he needed to "take unscheduled breaks of 10-15 minutes' duration every 45 to 60 minutes." (Tr. 824).

The Social Security Administration explicitly allows ALJs to assign less weight to treating sources when daily activities contradict an opinion. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at *36936 ("an opinion from a treating source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were

inconsistent with the opinion"); *see also Torres v. Barnhart,* 139 Fed.Appx. 411, 414 (3d Cir.2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Marr v. Colvin,* No. 1:13–cv–2499, *Report and Recommendation* at *44, 52 (M.D.P.A. April 15, 2015) (physicians opined that the claimant could not sit for more than forty-five minutes total out of an eight-hour workday but the claimant testified that she was regularly able to sit for up to five hours at a time). The regulatory guidance is entitled to deference. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183 L.Ed. 2d 153 (2012) (*Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation") (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L.Ed. 2d 79 (1997)). A reasonable person could rely on these activities to discount Dr. Zhang's opinion. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).[3]

The regulatory guidance addresses whether the ALJ may assign less than controlling weight to the treating source opinion, although it also indicates nonmedical evidence can "outweigh" the treating source opinion. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at *36936. Moreover, if there is substantial evidence inconsistent with the treating source opinion, then there will be substantial evidence consistent with the ALJ's denial. At the District Court level, the

---

[3]These contradictions also allowed the ALJ to reject the remaining portion of the opinion as less than fully credible.

standard of review is substantial evidence. *See* 42 U.S.C. §405(g). Judge Posner observes that the controlling weight provision seems redundant:

> It seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either administrative law judges or counsel…
>
> The rule directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." Obviously if it is well supported and there is no contradictory evidence, there is no basis on which the administrative law judge, who is not a physician, could refuse to accept it. Equally obviously, once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight.

*Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); *see also Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("We expressed some puzzlement about the rule"). The redundancy can be reconciled with SSR 96-2p, which encourages ALJs to incorporate opinions entitled to great weight into the RFC, even when they are not entitled to controlling weight. *Id.* Thus, the process is two steps at the ALJ level, with the ALJ first determining if there is substantial evidence inconsistent with an opinion and, if there is, determining whether the opinion should be assigned great or little weight. If the opinion is entitled to great weight, then the ALJ may use discretion to adopt it in the RFC.[4] At the

---

[4]Opinions entitled to controlling weight "must" be adopted in the RFC. *See* SSR 96-5p. Pursuant to SSR 96-2p, an ALJ "should" adopt opinions entitled to great weight in the RFC. *Id.* "Must" is a mandatory word, while "should" is discretionary. *See United States v. Swan*, 275 F.3d 272 (3d Cir. 2002). The SSA was capable of using language that was "clearly mandatory" because they used the word "must" in SSR 96-5p. *Id.* ("the

District Court level, in contrast, review should stop once the Court determines the opinion is not entitled to controlling weight because there is substantial evidence contradicting the opinion.[5]

Even if the "substantial evidence" language of 20 C.F.R. §404.1527(c)(2) and 42 U.S.C. §405(g) permitted the Court to move on to the multi-factor analysis and evaluate whether the ALJ should have assigned great weight instead of little weight to an opinion, the Court would not recommend remand here. Substantial evidence supports the ALJ's decision to assign less weight, and the Court would not direct a verdict requiring the ALJ to find that it was entitled to great weight if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Plaintiff asserts that the ALJ did not "consider" certain factors, like Dr. Zhang's specialization. (Pl. Brief at 10). However, "there is a distinction between what an adjudicator must consider and what the

---

Sentencing Commission is certainly capable of using language that is clearly mandatory. It has, in fact, done so in the text of § 5G1.3(a) and (b), where it used 'shall' to mandate consecutive and concurrent sentences in certain circumstances. For these reasons, we must give some weight to the drafters' choice of the word 'should'") (internal citations omitted). Finally, if "should" had the same definition as "must" in this context, it would render superfluous the requirement in SSR 96-5p to adopt treating source opinions entitled to controlling weight. *Id* ("If 'should' were mandatory, then this phrase would be superfluous. We are reluctant to embrace a reading that has this result since, generally, statutes should be read to give effect to every clause") (internal citations omitted).

[5] The Court reaches the same result under a harmless error framework. SSR 96-2p allows, but does not require, the ALJ to adopt an opinion entitled to great weight in the RFC. If the ALJ is permitted to exercise discretion and not include an opinion entitled to great weight in the RFC, then any error in failing to assign the opinion great weight should be considered harmless. The factors in 20 C.F.R. §404.1527(c)(1)-(6) can be used to inform whether the inconsistent evidence is substantial in 20 C.F.R. §404.1527(c)(2), but should not be a separate basis for remand under a substantial evidence standard of review.

adjudicator must explain in the disability determination or decision." SSR 06-3p. *See also Phillips v. Barnhart,* 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") *quoting Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). There is no evidence the ALJ failed to consider the appropriate factors.

Plaintiff asserts that "proof only of improvement is not substantial evidence unless Plaintiff's condition improved to the level of being able to work." (Pl. Brief at 12). However, the ALJ's assessment was consistent with the assessment of the medical expert, Dr. Balogh, who reviewed the majority of Plaintiff's records, and found that he had improved to the point of being able to work by December of 2011. (Tr. 82-86). Dr. Balogh's opinion, Plaintiff's daily activities, and the lack of medical treatment and objective findings after December of 2011 are all inconsistent with Dr. Zhang's opinion. Substantial evidence contradicts Dr. Zhang's opinion. A reasonable person could find that, despite Dr. Zhang's treating relationship and specialization, the inconsistency with the record merited according the opinion limited weight. *See* 20 C.F.R. §404.1527(c).

Plaintiff notes that the ALJ "could have arranged for a consultative examination, sent the entire file back to the State Agency for review, or obtained testimony from a medical expert." (Pl. Brief at 15). None of these actions were required. Few records post-date Dr. Balogh's December 2011 opinion, as Plaintiff treated only with an ophthalmologist from December of 2011 through March of 2013. Doc. 13. Moreover,

Plaintiff bears the burden of production. *See* 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). The ALJ properly discounted the evidence Plaintiff produced of work-related functional limitations, namely Dr. Zhang's opinion and his testimony. The Court does not recommend remand for reevaluation of Dr. Zhang's opinion.

### B. Mental Limitations

Plaintiff asserts that the ALJ erred in assessing Plaintiff's mental limitations because there were no mental limitations in the RFC. (Pl. Brief at 3-6). As an initial matter, Plaintiff's allegation regarding mental limitations is essentially a step two argument, because the ALJ found that Plaintiff's mental impairments were non-severe. (Tr. 24). Plaintiff must identify specific additional work-related limitations that should have been included in the RFC, not merely a "generalized response" that the RFC was insufficient. *See Brown v. Colvin*, No. 415CV00992MWBGBC, 2016 WL 6652360, at *2 (M.D. Pa. Nov. 10, 2016) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)). Plaintiff does not explicitly identify the specific additional work-related limitations the ALJ should have included. Pursuant to *Rutherford*, any error at step two was harmless.

Plaintiff does cite the various medical opinions regarding Plaintiff's function. (Pl. Brief at 3-6). Plaintiff acknowledges that the CE opined to only "slight" limitations,

which do not need to be included in the RFC. (Pl. Brief at 4). Plaintiff notes that the non-examining source opined Plaintiff "can complete simple, routine tasks, but has a somewhat limited ability to sustain concentration and adapt to changes in demands and routines." (Pl. Brief at 4). Defendant responds that the VE opined Plaintiff could still work as a surveillance system monitor even if limited to simple, unskilled, repetitive work. (Def. Brief at 2) (citing Tr. 256). This is an accurate characterization of the record. (Tr. 256). Plaintiff does not reply to this argument. Any error in failing to include a limitation to simple, unskilled, repetitive work was harmless.

Plaintiff notes "[t]he ALJ himself found that Mr. Loffreda has mild deficiencies of activities of daily living, social functioning, and concentration, persistence, or pace." (Pl. Brief at 5). This is consistent with a non-severe impairment. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Plaintiff notes Dr. Zhang's opinion that Plaintiff's pain would "constantly" interfere with the attention to perform even simple tasks, but, as noted above, that opinion was contradicted by Plaintiff's testimony he could care for his three-year old each day for six hours at a time. *Supra.* Plaintiff notes that Dr. Zhang opined he suffered drowsiness, but the ALJ explained that Plaintiff testified that he had no drowsiness. (Tr. 27). Dr. Balogh specifically opined that drug side effects would not interfere with Plaintiff's ability to perform work-related activities. (Tr. 85).

Plaintiff testified to some mental limitations, but Plaintiff does not challenge the ALJ's finding that his testimony was not fully credible. *See* Local Rule 84.40.4(b) ("The

court will consider only those errors specifically identified in the briefs"). Even if Plaintiff had challenged the adverse credibility finding, the Court would find substantial evidence supports the assessment. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The ALJ correctly noted Plaintiff's conservative treatment after December 2011, despite being insured through at least September of 2012. (Tr. 28). The ALJ correctly noted that Plaintiff made inconsistent claims. *See* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record"). Plaintiff reported greater symptoms and functional limitations in the Function Report and to the consulting examiner, in connection with his application for benefits, than noted in the treatment records. *Supra.* The Court would not direct a verdict that the ALJ find Plaintiff fully credible if the issue were before a jury. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The ALJ properly discounted Plaintiff's testimony and Dr. Zhang's opinion. The Court does not recommend remand for reevaluation of Plaintiff's mental limitations.

## C. Exposure to environmental factors

Plaintiff asserts that the ALJ erred in failing to include limitations to exposure to hazards and extreme cold or heat. (Pl. Brief at 5). The Third Circuit recently held that the Court would not remand for failing to question the VE regarding limitations where the claimant did not "seriously argue" that the limitations would preclude performing the specific jobs identified by the VE. *See Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir.

2014) (Claimant did not "seriously argue" limitations would preclude her from performing the jobs identified by the VE where "she dedicate[d] only one line of her brief to this issue"). Plaintiff does not seriously argue that a limitation in exposure to extreme cold/heat or hazards would preclude work as a surveillance system monitor, which requires him to watch security screens, and use a phone to call authorities if something looks suspicious. *See* 379.367-010 SURVEILLANCE-SYSTEM MONITOR, DICOT 379.367-010.Moreover, the Dictionary of Occupational Titles provides that a surveillance system monitor has no exposure to hazards or extreme heat or cold:

> Exposure to Weather: Not Present - Activity or condition does not exist
> Extreme Cold: Not Present - Activity or condition does not exist
> Extreme Heat: Not Present - Activity or condition does not exist
> Wet and/or Humid: Not Present - Activity or condition does not exist
> Noise Level: Level 2 - Quiet
> Vibration: Not Present - Activity or condition does not exist
> Atmospheric Cond.: Not Present - Activity or condition does not exist
> Moving Mech. Parts: Not Present - Activity or condition does not exist
> Electric Shock: Not Present - Activity or condition does not exist
> High Exposed Places: Not Present - Activity or condition does not exist
> Radiation: Not Present - Activity or condition does not exist
> Explosives: Not Present - Activity or condition does not exist
> Toxic Caustic Chem.: Not Present - Activity or condition does not exist
> Other Env. Cond.: Not Present - Activity or condition does not exist

379.367-010 SURVEILLANCE-SYSTEM MONITOR, DICOT 379.367-010. The Court does not recommend remand for VE evidence regarding exposure to hazards or extreme weather.

## VI.    Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate.    Accordingly, it is HEREBY RECOMMENDED:

I.    This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28

U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: May 3, 2017            _____s/Gerald B. Cohn_____

                                GERALD B. COHN
                                UNITED STATES MAGISTRATE JUDGE